**Stephen L. ROZMAN, Plaintiff and Appellant,**

**v.**

**J. G. ELLIOTT et al., Defendants and Appellees.**

**No. 72–1041.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1972.

Decided Oct. 16, 1972.

Patrick W. Healey, Healey, Healey, Brown & Burchard, Lincoln, Neb., for plaintiff and appellant.

Flavel A. Wright, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for defendants and appellees.

Before LAY and BRIGHT, Circuit Judges, and DEVITT, District Judge.*

BRIGHT, Circuit Judge.

The Board of Regents of the University of Nebraska discharged Dr. Stephen Rozman as an assistant professor of po-litical science in June of 1971 at the close of the academic year. The regents in dismissing Rozman cited his conduct during a sit-in demonstration on the Ne-braska campus in May of 1970, at which Rozman, students, and other faculty of the university protested the extension of the Vietnam War into Cambodia and the killing of Kent State students by the Ohio National Guard. Although Roz-man had not attained tenured status prior to his discharge, he was afforded an extensive pretermination hearing by the regents. Following his dismissal, Rozman brought this action in federal district court for reinstatement and oth-er relief,, contending that he had been discharged for his exercise of First Amendment rights and without due process. The district court granted Roz-man a full hearing on his complaint and denied relief. Its opinion is reported at 335 F.Supp. 1086 (D.Neb.1971). Roz-man brings this timely appeal. We af-firm.

Since the district court's opinion has recited the facts with extensive detail, we shall not repeat them here except by way of brief summary which may prove helpful to an understanding of the is-sues.

The district court found that during the evening of May 4 and extending into the morning of May 5, 1970, demonstra-tors at the University of Nebraska cam-pus at Lincoln staged a sit-in demon-stration in the university's Military and Naval Science (ROTC) Building, occupy-ing an area in the center of the building known as "the pit." Rozman partici-pated in the demonstration listening, with others, to speeches about the war interspersed with entertainment from a rock band. By midnight the crowd in the pit area had swelled to several hun-dred persons, including townspeople.

During the evening the students drew up a list of demands which they present-ed to the university administration. The administration, concerned over the continued occupation of the ROTC build-

* Sitting by designation.

ing, sought a voluntary evacuation of the building through negotiations with representatives of the students in a room away from the pit area. The atmosphere of these negotiations was earnest and, from the administration's viewpoint, tense. The mood of the crowd in the pit varied from festive to tense. Statements were made in the negotiating room recognizing the possibilities of violence by some demonstrators. Although Rozman did not participate in the presentation of demands upon the administration, he did become involved in the negotiations. He pressed vigorously for a statement by the university president sympathetic to the views of the students, indignant over the developments in the war and the Kent State shooting.

The administrators returned to the negotiating room at about 3:00 A.M. with a prepared statement. Rozman, when consulted by a student negotiator, characterized the statement as not strong enough. The student then expressed dissatisfaction with the statement to the university president. When the negotiators reacted adversely to the statement, it was agreed that the statement should be read to those assembled in the pit for their response. This reading was greeted initially with sustained applause, but following the departure of the administrators, the demonstrators voted to reject the proposed statement. About two hundred persons refused to leave the building and remained throughout the night.

Among other things, the students had demanded that the university suspend the ROTC program. During the night, a university administrator heard threats of violence should classes resume in the building. Rozman and the other demonstrators knew of the regular scheduling of an ROTC class for 7:30 A.M. Between 6:00 and 7:30 A.M., the administration decided to cancel the 7:30 class.

At 8:30 A.M., the university president read a statement to the demonstrators asserting that their continued presence in the building constituted disruptive or potentially disruptive conduct. He demanded an orderly evacuation of the building within 15 minutes, and warned that failure to comply could subject violators to penalties provided by law and university regulations. Additionally, he informed the group that an injunction would be sought in state court against continued occupancy of the building and that free transportation would be provided for anyone desiring to attend a scheduled 9:15 A.M. hearing on the injunction.

Most of the demonstrators, including Rozman, remained, linking arms as a symbolic declaration of solidarity. The demonstrators finally evacuated the building at about 10:00 A.M. Rozman personally left in order to attend a special faculty meeting called to discuss the incursion into Cambodia. He was among the last hundred persons to leave. Because of the evacuation, no restraining order was issued against the demonstrators by the state court.

The trial court found Rozman's employment status to be that of an assistant professor hired on a year-to-year basis with an expectancy of reappointment unless notified to the contrary before December 15th of the current academic year. The administration, following a meeting of the regents on November 20, 1970, notified Rozman that he might not be reappointed for the next academic year. Prior to December 15th, however, Rozman and the regents agreed to an extension of the date for notice of non-reappointment to February 15, 1971, in order to afford Rozman a hearing concerning his conduct during the demonstration of the previous May.

A special fact-finding committee made up of faculty members was appointed to conduct hearings and report to the regents. The committee heard and recorded testimony of forty-five witnesses in a transcript consisting of 1,074 pages, and presented the transcript and its report to the regents. The members of the committee then met with the regents and discussed the contents of the report.

On February 6, 1971, the regents adopted a resolution terminating Rozman's contract beyond the current academic year and gave as its reasons, among others, its disapproval of

> [Dr. Rozman's] actions in refusing to leave the Military and Naval Science Building when directed to do so by the administration and in refusing to cooperate with the administration efforts to secure the evacuation of the building after it had been determined on the morning of May 5, 1970, that the action of the students had become disruptive to normal University operations  *  *  *.

Upon the record presented it, the district court made these crucial determinations: (1) That the regents had not acted arbitrarily or capriciously; (2) That the regents had afforded Rozman a proper hearing; and (3) That the regents had not terminated Rozman's employment for any constitutionally impermissible reason.

On this appeal, appellant takes no direct issue with the district court's findings of fact but rather contends that the administrative proceedings were unfair and therefore violative of due process, and that his employment was terminated "on account of [his] participation in peaceful protest and his vigorous exercise of his constitutional rights."

■ On the first issue, we have carefully reviewed the record and agree with the analysis of the district court (Judge Urbom) that the pretermination proceedings in this case afforded procedural due process in conformity with the requirements of the Fourteenth Amendment. In part, appellant here challenges the regents' rejection of the conclusion of its fact-finding committee "that Dr. Rozman was not guilty of inappropriate actions during the week of May 4." This faculty committee had undertaken the limited obligation to conduct a hearing and report its findings to the regents. The committee's conclusion,

though labeled a general finding, therefore, fell outside its prerogative.

We find no procedural unfairness in this record.

■ We turn next to appellant's claim that his dismissal rested upon his exercise of First Amendment rights. The district court recognized, and we agree, that, to a point, the participation of students and faculty in the campus demonstration represented activity of speech, assembly, and petition protected by the First Amendment. The university regulations afforded recognition of the right of peaceful demonstration upon the campus, including public areas in buildings, provided such conduct did not interfere with university operations or "[prevent] others from exercising their rights and duties." [1]

Judge Urbom specifically observed:

> I am thoroughly persuaded that Professor Rozman had a right to present his views by voice and physical presence about the Cambodian incursion and the Kent State tragedy. [335 F.Supp. at 1097]

But, he found from the circumstances that Rozman exceeded the perimeters of First Amendment protection in two areas:

> One was in the negotiating room, when he intruded into the responsibilities of the administrators for negotiating an evacuation of the building; the other was in the "pit," when by his presence he contributed to a cancellation of a class and defied a directive of the administration to leave the building promptly. *Id.* at 1096.

In explication of the conduct in the negotiating room, the court added:

> A time came in the negotiating room  *  *  * when [Rozman] abandoned temporarily the process of communicating about [the Cambodian incursion and the Kent State tragedy] and assumed without invitation the role of attempting to break what he

---

1. Policy Statement on Campus Disorders. [App. at 16]

viewed to be an impasse. When he, "as a political scientist who teaches . . . techniques of diplomacy," pressed for a stronger statement by the administrators, asserting that such a stronger statement would be necessary in order to reach a settlement, he impinged upon the duties of the administrators. As negotiators for the university, the administrators had a right to negotiate in the manner chosen by them, as distinguished from the manner chosen by Dr. Rozman. At that point Dr. Rozman was not merely expressing a view as to the rightness or wrongness of the merits of the controversy, but was clothing himself with a procedural function belonging to the administrators. That kind of intermeddling is not protected by the Constitution. [*Id.* at 1097]

█ The district court's finding showed that at 3:00 A.M. on the morning of May 5th, the administration wanted the demonstrators to leave the ROTC building voluntarily, thus obviating any necessity of calling police and risking a violent response from the students. The court's careful exposition of facts supports its finding that Rozman's conduct in the negotiating room at this time impinged upon the duties of the administrators and constituted "intermeddling" which is not protected by the Constitution. *Compare* Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968); Long v. Board of Education of City of St. Louis, 456 F.2d 1058 (8th Cir. 1972).

█ We also agree with the determination of the district court that Rozman's contribution to the cancellation of a class and his defiance of the university president's order to evacuate the building did not come within the protection of the First Amendment.

The Supreme Court, in Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969), afforded First Amendment protection to the symbolic act of wearing black armbands in school as a protest against the Vietnam War. The Court particularly noted that the underlying record

> fails to yield evidence that the school authorities had reason to anticipate that the wearing of the armbands would substantially interfere with the work of the school or impinge upon the rights of other students. *Id.* at 509, 89 S.Ct. at 738.

The record presented here by appellant is to the contrary. As the district court noted, statements and threats by some of the demonstrators reasonably led the administration to fear that the peaceful demonstration might erupt violently if classes were held in the building on the morning of May 5th. Thus, the demonstration served, at least in part, to force cancellation of a scheduled ROTC class. When the demonstrators, including Rozman, locked arms in defiant protest of the president's demand for evacuation of the building, they substantially interfered with the rights of the other students and faculty to use the building for educational purposes. Clearly, under the circumstances found by the district court, the response of the demonstrators, including Rozman, to this demand represented disruptive and constitutionally unprotected activity.

The district court also observed that much of Rozman's conduct during the night in question fell within the ambit of protected First Amendment activity. The regents in the resolution dismissing Rozman made reference to protected as well as unprotected activity. The district court found that all factors recited and relied upon by the regents were interrelated and constituted a proper summary of Rozman's conduct on May 4th and 5th. Moreover, the court specifically found that Rozman failed to show a denial of any constitutional right by the regents' decision to terminate his employment. This specific finding is an appropriate one in cases of this kind,[2] and if supported by the evidence, as is the case here, binds us on appeal.

---

2. *See* Wilderman v. Nelson, 467 F.2d 1173, 1177 n. 5 (8th Cir., 1972).

The dismissal, for the reasons cited by the regents, of an obviously well-qualified, able, and talented college professor such as the record shows Rozman to be, may be harsh. But the power to make that decision, so long as appellant was not deprived of any constitutional rights, rested with the university.

Affirmed.