**James D. LEVITT and Darrell Wininger, Plaintiffs,**

v.

**BOARD OF TRUSTEES OF the NEBRASKA STATE COLLEGES, A Political Subdivision of the State of Nebraska, et al., Defendants.**

**Civ. No. 73–L–221.**

United States District Court,
D. Nebraska.
April 30, 1974.

Theodore L. Kessner of Crosby, Pansing & Guenzel, Lincoln, Neb., for plaintiffs.

Nelson, Harding, Marchetti, Leonard & Tate, Lincoln, Neb., for defendants.

## MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

Plaintiffs' action herein is for declaratory and injunctive relief to prohibit the defendants, while acting under color of State law, from depriving plaintiffs of their rights, privileges and immunities guaranteed by the Fourteenth Amendment to the Constitution of the United States, and Title 42 U.S.C., Sections 1983 and 1985.

Jurisdiction is conferred upon this Court by Title 28 U.S.C., Section 1343.

Both plaintiffs were employed as instructors at Peru State College for the 1972–73 academic year and had been so employed for a number of years and both are able and competent in their field.

Plaintiff James D. Levitt is an Associate Professor of English and Speech, and his employment there began in 1948.

Plaintiff Darrell Wininger is a professor of Business Education and his employment at Peru State College began in 1952.

The defendant, Board of Trustees of the Nebraska State College, is a political subdivision of the State of Nebraska, created by statute as a subdivision of state government, constituting a body corporate, for the purpose of administering the Nebraska State Colleges.

The defendants, William Colwell, J. Alan Cramer, George W. Egermayer, James A. Lane, Ward H. Reesman, Robert L. Walker and Cecil Stanley, are members of the Board of Trustees of the Nebraska State Colleges (hereinafter collectively designated "Board of Trustees Members") and are citizens of the State of Nebraska.

. Max G. Smith is the Acting President of Peru State College, one of the State Colleges created by the State of Nebraska which is under the direction of the Board of Trustees of the Nebraska State Colleges.

"In early 1973 the Legislature of the State of Nebraska adopted a budget which necessitated a reduction in the number of faculty members of Peru State College. At the direction of the Board of Trustees of the Nebraska State Colleges, which had governing responsibilities over Peru State College, the college administration developed criteria for determining which faculty member should be released. Upon application of that criteria the administration recommended the release of eleven faculty members, including the plaintiffs." (Judge Urbom's opinion 9/5/73 on Motion for Preliminary Injunction.)

To detail this aspect of the case the record reflects that on June 16, 1973, Dr. Smith made recommendations to the Board of Trustees concerning the termination of the plaintiffs, James D. Levitt and Darrell Wininger as faculty members at Peru State College.

On June 18, 1973, Dr. Smith informed Mr. Levitt and Dr. Wininger that their employment would terminate at the close of the 1972–73 academic year because of financial exigency. Prior to that time, neither Mr. Levitt nor Dr. Wininger had been informed that they were being considered for termination.

Upon receipt of the letters of termination, the plaintiffs made inquiry concerning the justification for their termination; since according to the provisions of the By Laws of the College, both of the plaintiffs were entitled to continuing employment until there was a determination of just cause for their termination, after a hearing. Until the time of the receipt of Dr. Smith's letter of June 18, 1973, no notice had been given and no hearing had been provided to the plaintiffs.

When the terminations were announced by Dr. Smith, the plaintiffs then petitioned this Court for relief. After a hearing on a motion for preliminary injunction, Judge Urbom rendered an order on September 5, 1973, enjoining the College from giving effect to the claimed termination until after a proper hearing had been held at which justification had been demonstrated to support the terminations.

As a convenience to the parties, the record for review by the Board of Trustees on the issue of justification for termination, was made before the Grievance Committee of the Faculty Association which heard testimony and received exhibits on September 24, 1973. The time, place and date of this hearing were agreed to by counsel for the administration and counsel for the plaintiffs. At the hearing the plaintiffs were entitled to right of counsel, the right of presentation of witnesses and affidavits, hearing all evidence in support of the President's statement, and the questioning of adverse witnesses. Copies of the transcript of the hearing before the Faculty Grievance Committee were furnished to the plaintiffs. The record of that hearing was submitted to the Board of Trustees on October 11, 1973, and a hearing was held on that date and on October 23, 1973. In addition, the testimony of Dr. Robert Creamer, (one of the deans Dr. Smith claimed participated in the evaluation of the faculty) was taken on October 4, 1973, in Little Rock, Arkansas. That deposition was also submitted to the Board of Trustees.

After hearing the evidence, which was later submitted to the Board of Trustees, the Faculty Committee concluded that the so-called "objective criteria," were unfair in certain aspects. Notwithstanding this assessment of the Faculty Committee, the Board of Trustees at its meeting of October 23, 1973, reaffirmed the termination notices given by Dr. Smith. At the hearing before the Board, the plaintiffs were again given all due process rights including the questioning of adverse witnesses.

948

After two hearings the Board, upon consideration of all the evidence before it, by letter officially notified the parties as follows:

**Board of Trustees**
NEBRASKA STATE COLLEGES
Chadron · Peru · Wayne · Kearney

P.O. Box 94605
State Capitol Station
Lincoln, Nebraska 68509

October 24, 1973

OFFICERS

Robert L. Walker,
President

Ward H. Reesman,
Vice-President

James E. Todd,
Secretary and
Executive Officer

MEMBERS

William E. Colwell,
Hay Springs

J. Alan Cramer,
Wayne

George W. Egermayer,
Omaha

James A. Lane,
Ogallala

Ward H. Reesman,
Falls City

Robert L. Walker,
Kearney

Cecil E. Stanley,
Commissioner of
Education
Member Ex-Officio

Mr. Theodore L. Kessner
Crosby, Pansing & Guenzel
400 Lincoln Benefit Life Bldg.
Lincoln, Nebraska  68508

Mr. William A. Harding
Nelson, Harding, Marchetti,
   Leonard and Tate
300 .N.S.E.A. Building
P.O. Box 82028
Lincoln, Nebraska  68501

Re:  Levitt & Wininger Termination

Gentlemen:

This is official notification of the Board action taken yesterday in Lincoln regarding the Levitt and Wininger termination case.  At that time, both of you were informed verbally of the decision of the Board.  Official minutes of the Board reflect that after returning from executive session during which the case was considered, Board member Reesman made the following motion:

After having considered all evidence presented by the parties, argument of counsel, and having carefully considered all issues in this matter, the Board of Trustees of the Nebraska State Colleges does hereby affirm the decision of the Peru State College administration to terminate the services of James D. Levitt and Darrell Wininger.

Official Board minutes also reflect that this motion was seconded and passed by the Board members in attendance.  The Board has empowered me to indicate to you that the basis for this decision, based upon discussion in executive session, is that a financial need existed to terminate faculty positions on the Peru State College campus and that the action of the Peru State College administration in selecting Mr. Levitt and Dr. Wininger for termination was not done in an arbitrary or capricious manner.

Sincerely yours,

*Edwin C. Nelson*

Edwin C. Nelson
Executive Officer

cab

CHADRON STATE COLLEGE
Dr. Edwin C. Nelson, Pres.

KEARNEY STATE COLLEGE
Dr. Brendon J. McDonald, Pres.

PERU STATE COLLEGE
Dr. Douglas W. Pearson, Pres.

WAYNE STATE COLLEGE
Dr. Lyle E. Seymour, Interim Pres.

Thereafter, the defendants filed a motion to dissolve the preliminary injunction and Judge Urbon entered the following Order:

"The court has been informed that a hearing has been held before the Faculty Grievance Committee and the Board of Trustees of Peru State College. No finding is made that such hearing complies with due process of law, but the holding of such hearing renders improbable the success of the plaintiffs on the merits.

"IT THEREFORE HEREBY IS ORDERED that the preliminary injunction enjoining the defendants from giving effect to the action of the Board of Trustees of the Nebraska State Colleges of June 16, 1973, to terminate the employment of James D. Levitt and Darrell Wininger is dissolved effective October 23, 1973."

The case was then set for trial on the merits.

On April 30 the cause was tried before Judge Paul X Williams on exchange from the Western District of Arkansas. The Court heard the testimony of both plaintiffs and at the time of trial the following were made a part of the record:

1. Copy of the Transcript of the Faculty Committee Hearing held on September 24, 1973, and the 23 exhibits received thereat.

2. Deposition of Dr. Robert Creamer, taken October 4, 1973.

3. Transcript of Board of Trustees proceeding of October 11, 1973.

4. Report of Recommendation of the Faculty Committee dated October 18, 1973.

5. Transcript of the Board of Trustees proceeding of October 23, 1973.

6. The October 24th 1973 letter of official notification to counsel for plaintiffs' of the termination of the services of Messrs. Levitt and Wininger by the Board of Trustees of Nebraska State College.

The issues presented by the record in this case are:

1. Whether the plaintiffs have a constitutional right to continued employment at Peru State College notwithstanding lack of funds due to failure of the Nebraska Legislature to fully fund the budget request of Peru State College.

2. Whether any actions of the defendants relating to the discharge of the plaintiffs foreclosed future employment opportunities of the Plaintiffs.

After the Legislature gave tentative approval to the Governor's budget in March of 1973, Dr. Max Smith as Acting President of Peru State College met with faculty members to discuss the potential impact of the budget. Smith indicated to faculty members that the Governor's budget called for "severe reductions in staff", but that the Nebraska State Colleges were attempting to obtain an amendment to the budget that would lessen the blow of the reductions in staff.

Being unsuccessful in this attempt, Dr. Smith initiated steps to devise a fair method to determine which faculty members should be terminated.

Dr. Smith acting with Deans Creamer and Barrett prepared a list of 16 criteria on which faculty members could be evaluated in order to verify the judgment made in deciding which faculty members would be terminated.

Indices were then developed for the application of the 16 criteria to faculty members. Smith called out the names of the various faculty members and the Deans rated each of the individuals under their direction. This criteria was applied to each member of the faculty and consideration was also given to maintaining the most necessary programs at the college; and retaining those faculty members necessary for carrying on these programs.

Dr. Smith testified that he made his recommendation for termination of the plaintiffs, and other faculty members, who were released because of the reduced budget, on the basis of the "objective evaluation" of all of the faculty members and the overall educational program. The evaluation tests referred to herein

are reflected in various exhibits, which set forth the criteria and the results of the application.

It appears to the Court that this reflects a fair and reasonable approach to the problem. The Board is obligated to provide the best possible education program at the various State Colleges. As a consequence, upon being faced with a shortage of funds, the Board decided it must maintain the most necessary programs at Peru College and this necessitated deciding which faculty members were necessary to maintain those programs.

This position of the Board is supported by a logical interpretation of the Board's obligations under the State Constitution and Statutes. The American Association of University Professors has recognized that:

Among the various considerations, difficult and often competing, that have to be taken into account in deciding upon particular reductions, the retention of a viable academic program should necessarily come first.

See Operating Guidelines on Institutional Problems Resulting From Financial Exigency, American Association of University Professors (September, 1972).

The use of objective criteria in selecting faculty members for termination has generally been looked upon with favor by the courts when faced with substantially the same problem in desegregation cases. Rolfe v. County Board of Education of Lincoln County Tennessee, 282 F.Supp. 192, 200 (E.D.Tenn.1966), aff'd 391 F.2d 77 (6th Cir. 1968); McFerren v. County Board of Education of Fayette County, Tennessee, 455 F.2d 199, 201 (6th Cir. 1971); Moore v. Board of Education, 448 F.2d 709, 713 (8th Cir. 1971).

■ We find that the process utilized to select the plaintiffs for termination was fair and reasonable and that the plaintiffs have not carried the burden of proving that the selection process was either arbitrary or capricious.

In the case of Scheelhaase v. Woodbury Central Community School District, 488 F.2d 237 (8th Cir. 1973) the Court said:

". . . It is our holding that the administration of the internal affairs of the school district before us has not passed by judicial fiat from the local board, where it was lodged by statute to the Federal court. Such matters as the competence of teachers, and the standards of its measurement are not, without more, matters of constitutional dimensions. They are peculiarly appropriate to state and local administration."

■ In the instant case, where lack of funds necessitated releasing a sizeable number of the faculty, certainly it was peculiarly within the province of the school administration to determine which teachers should be released, and which retained.

■ Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts which it believes for the best interest of the school, and there is no showing that the acts were arbitrary or generated by ill will, fraud, collusion or other such motives it is not the province of a court to interfere and substitute its judgment for that of the administrative body. Best v. City of Omaha, 138 Neb. 325, 293 N.W. 116 (1940); Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir., 1970).

These principles indicate that the process used in the instant case to determine the terminations was fair and reasonable and did not deprive the plaintiffs of any of their Constitutional rights.

The record clearly indicates that the defendants were most careful to avoid characterizing any of the individuals selected for termination as incompetent individuals; and that the defendants did not take any actions which could have damaged the standing of the plaintiffs in the educational community, or created a detrimental effect upon the future employability of the plaintiffs. In fact, Smith's continued belief in the compe-

tency of the plaintiffs is underscored by his efforts in attempting to find other employment for plaintiff Wininger. However, the testimony reflects that plaintiff Levitt sought neither assistance nor recommendations from Smith in finding a new job.

■ The plaintiffs have suggested that termination or non-retention in and of itself will create difficulties in subsequent academic careers. Even assuming that such may be correct, the plaintiffs have not shown any loss of Constitutional rights or liberties. As noted by the Supreme Court of the United States:

> "The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the non-renewal of his contract on a charge, for example, that he had been guilty of dishonesty or immorality. Had it done so, this would be a different case. For where a person's good name, reputation, or honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. . . . In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake.

> "Similarly, there is no suggestion that the State, in declining to reemploy the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this again, would be a different case. See Board of Regents v. Roth, 408 U.S. 564, 573–574, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). (Citations and footnotes Omitted)."

Even the letters sent to the plaintiffs informing them of their terminations (which could have fallen into hands other than those of the plaintiffs) made every effort to keep the selection process a private matter between the College and the plaintiffs. The evidence clearly supports a conclusion that the defendants avoided any actions that might have placed the "good name, reputation, honor, or integrity" of the plaintiffs at stake.

In this case the plaintiffs are claiming that mere non-retention, in and of itself, places some sort of stigma upon the professional reputation of the plaintiffs and therefore forecloses future employment possibilities. The Supreme Court in *Roth* answered this specific question as follows:

> "The District Court made an assumption 'that non-retention by one university or college creates concrete and practical difficulties for a professor in his subsequent academic career.' 310 F.Supp. at 979. And the Court of Appeals based its affirmance of the summary judgment largely on the premise that 'the substantial adverse effect non-retention is likely to have upon the career interests of an individual professor' amounts to a limitation on future employment opportunities sufficient to invoke procedural due process guarantees. 446 F. 2d at 809. But even assuming, *arguendo,* that such a 'substantial adverse effect' under these circumstances would constitute a state-imposed restriction on liberty, the record contains no support for these assumptions. There is no suggestion of how non-retention might affect the respondent's future employment prospects. Mere proof, for example, that his record of non-retention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" 408 U.S. at 574 n. 13. (Emphasis as in original).

The facts in this case are analogous to Walker v. California State Board of Trustees, 351 F.Supp. 997 (W.D.Pa.1972) aff'd 485 F.2d 683, where the court concluded:

> Here as in *Roth* the state college in refusing to renew plaintiff's contract did not accuse him of anything which would impugn his standing and associations in his community—he was not charged with any impropriety or immorality requiring refutation and plaintiff was not stigmatized in such a way that other employment opportunities were barred to him. Id. at 998.

The Court requested the respective counsel to submit proposed Findings of Fact and Conclusions of Law. We have carefully considered same, and in light of the controlling principles of law enunciated herein, we find the defendant's submission to be essentially correct, and adopt such as a part of this opinion, with the minor modifications which the Court has deemed fit to make.

### FINDINGS OF FACT

#### I.

In early 1973 the Legislature of the State of Nebraska adopted a budget which necessitated a reduction in the number of faculty members of Peru State College.

#### II.

The process used to select the plaintiffs for termination was fair and reasonable and intended to maintain the most viable and best overall program of education for Peru State College.

#### III.

The defendants did not take any actions in either the actual dismissing of the plaintiffs, or in announcing the dismissals, that either damaged the standing of the plaintiffs in the educational community, or created a detrimental effect upon future employability of the plaintiffs.

We make the following conclusions of law:

#### I.

The defendants are granted wide discretion in the area of appointment, retention, and discharge of faculty members, and this Court may not overturn decisions in this area unless the decisions are patently arbitrary or baseless. See Neb.Const. Art. VII, § 13; Neb.Rev.Stat. § 85–304 (Reissue 1971); Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970); Slochower v. Board of Education, 350 U.S. 551, 556, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Scheelhaase v. Woodbury Central Community School District,, 488 F.2d 237 (8th Cir. 1973).

#### II.

The process used by the defendants in the instant case to select the plaintiffs for termination was neither arbitrary nor capricious. Rozman v. Elliott, 335 F.Supp. 1086, 1096 (D.Neb.1971) aff'd 467 F.2d 1145 (8th Cir. 1972); Jones v. Snead, supra; Scheelhaase, supra.

#### III.

The plaintiffs are not guaranteed any absolute constitutional right to continued employment, Parker v. Board of Education of Prince George's County, Maryland, 237 F.Supp. 222, 227 (D.Md. 1965) aff'd 348 F.2d 464 (4th Cir. 1965), cert. denied 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966).

#### IV.

Plaintiffs tenure rights do not guarantee them continued rights to public employment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972).

#### V.

The terminations of the plaintiffs were not conducted so as in any manner to damage their professional reputations or forclose their rights to future employability. Board of Regents v. Roth, supra; Walker v. California State Board of Trustees, 351 F.Supp. 997, 998 (W.D. Pa.1972), aff'd 485 F.2d 683 (3rd Cir. 1973).

## VI.

The terminations of the plaintiffs in the instant case were proper and did not in any way infringe any constitutional rights of either plaintiff. Board of Regents v. Roth, supra; Perry v. Sindermann, 405 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Accordingly, an Order dismissing the complaint of the plaintiffs will be entered on this date.