ROBERT J. BRADY, APPELLANT, v. BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

242 N. W. 2d 616

Filed May 26, 1976. No. 40331.

Healey, Healey, Brown & Wieland, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate, Kevin C. Berens, and William A. Harding, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The plaintiff, a tenured associate professor of history at Wayne State College, was dismissed without a hearing in June 1973, after the college budget for the 1973-74 school year had been reduced by the Legislature. This action is for damages and for declaratory relief as a result of the termination of his employment. The District Court found that plaintiff was entitled to procedural due process before termination of his tenured employment. The trial court, however, dismissed plaintiff's petition upon the ground that procedural due process had been available to plaintiff under a grievance procedure in a collective bargaining agreement, but that plaintiff had missed a time limit in that procedure and was therefore bound by the resulting dismissal on procedural grounds.

The plaintiff, Robert J. Brady, was first employed as an assistant professor of history at Wayne State College in August of 1967. The plaintiff's employment was extended for the 1968-69 school year and the 1969-70 term, including the summer session of 1970. For the school year 1970-71, the plaintiff requested and was granted a leave of absence for additional work on his Ph.D. He was offered and accepted reappointment for the year 1971-72, and was promoted to associate professor. Due to the condition of funds, Brady was not offered appointment for the summer of 1972. He was again reap-

pointed for the 1972-73 school year, with tenure, at a salary of $10,400.

Brady's contract of employment specifically included the college bylaws, policies, and practices relating to academic tenure, and faculty dismissal procedures. The tenure provisions of the bylaws provided that tenure may be acquired after 4 probationary years. Section 7 of the bylaws provides that dismissal of a faculty member with tenure must be initiated by the president or other administrative officer, who must hold a personal conference with the faculty member to discuss the anticipated action. If the problem is not resolved in the first step, the president is to present a formal statement of reasons for termination and provide the faculty member with a date for a formal hearing by a faculty committee. The full formal faculty committee hearing includes right to counsel, presentation of evidence, witnesses, and affidavits, and requires recording and a transcript of the hearing. The faculty committee makes its recommendation to the president, but regardless of that recommendation, a hearing may be requested before the governing board of the college by either the president or the faculty member facing termination. That hearing is also a formal hearing and the decision of the governing board is final. At no time did Brady ever have a hearing, nor was he ever notified of his termination or prospective termination until after the college board took official action to terminate his appointment on June 16, 1973.

On February 21, 1973, the president of the college wrote Brady: "You are hereby offered reappointment in your present assignment for 1973-1974. Salary statements may be made only after the legislature has acted on our budget request." On March 10, 1973, the interim president of the college wrote Brady: "Due to the condition of funds, it is not possible to offer extension of appointment for the third term or summer session of 1973."

By letter dated June 18, 1973, the interim president informed Brady that because of the level of legislative appropriations, he would not be offered reappointment for the 1973-74 academic year. The letter advised him that his termination was based upon "financial exigency." In that letter the interim president advised Brady that, by appointment, he would discuss the conditions under which Brady's termination was made and under which Brady was selected as one of the people to be terminated; and that he would be pleased to give Brady any assistance possible in helping him find employment. Brady was in Oregon when he received the notice of termination.

On June 30, 1973, Brady wrote to the Chairman of the Department of Social Sciences attempting to initiate a grievance procedure provided for in a collective bargaining agreement between the board and the Higher Education Association of Nebraska. He was not a member of the association, but was entitled to the benefit of the bargaining agreement. He set out as the basis for his grievance that his tenure status had been violated and that the college had not dismissed him in accordance with the provisions of the bylaws, which were a part of his contract. On July 6, 1973, the Chairman of the Department of Social Sciences denied Brady's grievance. On July 10, 1973, Brady wrote to the Dean of Arts and Sciences for the college, again calling attention to the two grounds for his complaint. On July 16, 1973, the dean wrote a letter to Brady in Oregon advising him that his termination was based upon financial exigency and denied his grievance. On August 3, 1973, Brady wrote to Dr. Wills, the Acting Vice President for Academic Affairs, and complained that the earlier denials of his grievance had relied upon "financial exigency" but had ignored his specific requests. On August 13, 1973, Dr. Wills advised Brady that his August 3rd appeal had been carefully reviewed and that Dr. Wills had determined that the grievance was denied "for a number of

reasons." Dr. Wills first asserted that Brady's appeal was out of time because it was after July 26, 1973. Second, that Brady had not enumerated any specific provisions of the bylaws or the collective bargaining agreement which had been violated. Third, that under the bylaws, tenure ceases when the position in question no longer exists, and because his position was eliminated due to lack of funds, his tenure status ceased at the time his position was eliminated. Fourth, Dr. Wills asserted that the notice provisions of the bylaws applied only to probationary employees and was not applicable to Brady. On August 20, 1973, Brady appealed to the Chairman of the Faculty Senate, and on August 24, 1973, the appeal was rejected "on procedural grounds" that he had not appealed the grievance to Dr. Wills within 10 days after the July 16th letter denying his grievance.

The legislative appropriation for the college in the spring of 1973 provided for approximately 80 full-time equivalent faculty members where there had been approximately 99 full-time equivalent faculty members in the 1972-73 year. Because of authorized terminations for other reasons, only seven faculty members were recommended for involuntary termination. Three of those were in the history department. When Brady was terminated, one untenured member was retained in the history department and another untenured person, the former president of the college, was added to the history faculty at a salary higher than other members of the history department. Brady's position was not eliminated but Brady was. Others, including an untenured person, taught his former courses in the 1973-74 school year. It is uncontested that Brady was a good teacher and that no termination for cause could be justified.

There can be no serious question but that the bylaws of the governing body with respect to termination and conditions of employment became a part of the employment contract between the college and Brady. At the time of the offer and acceptance of initial appointment

in 1967, Brady was advised in writing that the offer and acceptance of appointment at Wayne constituted a contract honoring the policies and practices set forth in the faculty handbook, which was furnished to him at that time.

Courts have generally held that where a college faculty member is employed using annual reappointment forms which do not set forth in full the terms and conditions of employment, the employment policies, rules, and regulations of the college become a part of the employment contract between the college and the faculty member. See Rehor v. Case Western Reserve University, 43 Ohio St. 2d 224, 331 N. E. 2d 416, cert. den. 423 U. S. 1018, 96 S. Ct. 453, 46 L. Ed. 2d 390. In American Assn. of University Professors v. Bloomfield College, 129 N. J. Super. 249, 322 A. 2d 846, affirmed 136 N. J. Super. 442, 346 A. 2d 615, the court noted: "The legal basis of plaintiff's claim of tenure is to be found in the Faculty Handbook of the college * * *. This document forms an essential part of the contractual terms governing the relationship between the college and the faculty." See, also, Zimmerman v. Minot State College, 198 N. W. 2d 108 (N. D.); Collins v. Parsons College, 203 N. W. 2d 594 (Iowa); Greene v. Howard University, 412 F. 2d 1128.

The defendant seeks to avoid the contractual obligation on the ground that the bylaws provide: "Tenure ceases when the position in question no longer exists." The contention is unsupportable on the facts here.

The defendant also contends that the action of the Legislature in reducing appropriations made it impossible to perform its contractual commitments to Brady. This is obviously inaccurate. The reduction in funds simply made it financially impossible to pay the salaries under seven faculty contracts. It did not make it impossible to pay Brady any more than it made it impossible to pay any one of the more than 100 other faculty contracts. In any event, the reduction in funds could not

and did not in any way make it impossible for defendant to perform its contractual obligations to give Brady notice and hearing prior to termination. A tenured professor has a sufficient property interest in continued employment to entitle him to the protection of procedural due process. Board of Regents v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548; Perry v. Sindermann, 408 U. S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570.

The trial court quite properly found that Brady was entitled to the notice and hearing required by procedural due process. The District Court, however, found that the HEAN collective bargaining agreement afforded plaintiff procedural due process, and that since he attempted to utilize it, he is bound by the dismissal which resulted for purely procedural reasons. The trial court in the case before us also found that the termination here was for lack of funds and was justified, and relied upon factual findings of financial exigency and administrative necessity made in the case of Levitt v. Board of Trustees of Nebraska State Colleges, 376 F. Supp. 945. That case dealt with the same legislative reduction in appropriations and the method of faculty reduction taken at Peru State College.

In that regard it should be noted that Judge Urbom's memorandum on the motion for preliminary injunction entered in the Levitt case on September 5, 1973, granted the motion for preliminary injunction on the ground that procedural due process required it, and did so after specifically considering the provisions of the collective bargaining agreement involved here. After the granting of that injunction, the plaintiffs in the Levitt case were then given a hearing before the board of trustees, and following the hearing were again terminated. The ultimate opinion in Levitt resulted. Judge Urbom specifically stated in his memorandum of September 5, 1973: "No reason appears for any need by the college for a termination prior to an evidentiary hearing before the Board. Nothing prevented, as far as the evidence shows,

the Board of Trustees' offering the plaintiffs a hearing, either before the decision to terminate, or after the decision to terminate but before the teaching duties were to begin in the fall."

The defendant contends, and the trial court accepted the contention, that because Brady began a grievance procedure under the HEAN collective bargaining agreement, he waived his contractual rights, and also waived his constitutional rights to procedural due process. We find no case cited, nor have we been able to find any, which will support such a conclusion. The HEAN grievance procedure itself required the college representative to meet with Brady and discuss the matter at issue fully with him at each step of the appeal. It also required that any grievance initiated by a tenured faculty member which involved dismissal or nonreappointment required a hearing procedure in step 4. Those provisions were simply ignored by the defendant.

There is no evidence in the record to support the dismissal of the appeal as out of time except an assumption as to the time of receipt of a letter, and then the computation of time is based on an erroneous interpretation of the bargaining agreement by reference to other provisions which are inapplicable.

The plaintiff was deprived of his right to notice and hearing required to be granted to him before he could be deprived of his rights. The termination was ineffective to terminate his teaching contract. That contract therefore continued on the same terms for the 1973-74 contract year, but we find no practical justification for an indefinite extension. His salary for the previous year was $10,400. There had been no agreement as to salary for the following year. Under such circumstances, the measure of damages is the amount of his salary for the last effective year of his contract, $10,400, less the amount which he earned, or with reasonable diligence could have earned, from other employment during the 1973-74 contract renewal period. See,

Schlueter v. School Dist. No. 42, 168 Neb. 443, 96 N. W. 2d 203; Annotation, Elements and Measure of Damages in Action by Schoolteacher for Wrongful Discharge, 22 A. L. R. 3d 1047. Interest on the net judgment should run from the end of the 1973-74 contract year.

The judgment of the District Court is reversed and the cause remanded to the District Court for determination of damages, including interest and costs.

REVERSED AND REMANDED.

SPENCER, J., dissenting.

I respectfully dissent. Where, as here, an individual avails himself of the benefits of a collective bargaining agreement, he may not reject the terms of that agreement. Arnett v. Kennedy (1974), 416 U. S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15.

Brady was terminated for sufficient cause: The lack of funds. As stated in Levitt v. Board of Trustees of Nebraska State Colleges, 376 F. Supp. 945: "* * * where lack of funds necessitated releasing a sizeable number of the faculty, certainly it was peculiarly within the province of the school administration to determine which teachers should be released, and which retained."

Working under the premise that with the limited funds available as complete an academic program as possible should be maintained, Wayne State College made a reasonable decision to terminate Brady, based upon a comparison of his academic preparation with other members of the history department. On the record, I would sustain the judgment of the District Judge. He found the procedure for a hearing set out in the bylaws did not have to be precisely followed so long as procedural due process was provided. He also found that Brady, having utilized the grievance and arbitration procedure, was bound by the decision.

NEWTON, J., joins in this dissent.