No. 43,700

ELMER DUNCAN and SHIRLEY L. DUNCAN, *Appellants,* v. DAVID H. ESSARY and NORMA ESSARY and THE ASSEMBLY OF GOD CHURCH OF BELLE PLAINE, KANSAS, *Appellees.*

(392 P. 2d 877)

Opinion filed June 6, 1964.

*Wilmer E. Goering,* of Wichita, argued the cause, and *Earl M. Clarkson, Jr.* and *I. D. Brown,* both of Wichita, were with him on the briefs for the appellants.

*J. H. Taggart* and *C. E. Russell,* both of Wellington, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in an action which was commenced on the theory of forcible detention of real property after failure to pay rent, but which later developed into a controversy as to whether certain absolute deeds were in fact security for a debt.

The testimony relating to the material facts are in direct conflict. We will present the factual issues as they appear in the pleadings.

The plaintiffs, Elmer Duncan and Shirley, his wife, filed a complaint before a justice of the peace against the defendants, David H. Essary and Norma, his wife, and the Assembly of God Church,

Belle Plaine, Kansas. The complaint alleged that the plaintiffs were the owners of the premises (specifically described) consisting of a tract of land, 1.17 acres, adjacent to the city limits of Belle Plaine, Kansas, and:

"That since the first of February, 1960, the Defendants and each of them have occupied said premises as tenants from month to month from the Plaintiffs at a rental of $150.00 per month, that said rent was payable on the 10th day of each month thereafter.

"That since August 1, 1960, Defendants have failed, neglected, and refused to pay the aforesaid rent to Plaintiffs although Plaintiffs have duly demanded the payment thereof."

The prayer was for restoration of possession of the premises and such further relief as the court deemed just and equitable.

Defendants by verified answer made it appear that title to the real estate claimed by plaintiffs and additional real estate located in Blackwell, Oklahoma involving the same transaction was in dispute. The action was transferred to the district court for trial pursuant to G. S. 1949, 61-107.

The defendants answer, filed in the district court, was challenged by a motion to make definite and certain which was sustained in part. An amended answer was then filed which will be presented in considerable detail as the facts alleged and established by the evidence are implicit in the lower court's judgment. We quote in part:

"That on or before the 1st day of November, 1959, and particularly in October, 1959, the members of The Assembly of God Church of Belle Plaine, Kansas, and the defendant, David H. Essary, its pastor, selected a site for a church and drew up plans for a church building to be built on said site, . . . That on or about the 4th day of November, 1959, the defendant, David H. Essary, as an individual, and as agent and pastor of the defendant, The Assembly of God Church of Belle Plaine, Kansas, and the Plaintiffs, Elmer Duncan and Shirley L. Duncan, entered into an oral contract under the terms of which the plaintiff, Elmer Duncan, agreed to loan to the defendant, David H. Essary, as an individual, and to the defendant, The Assembly of God Church of Belle Plaine, Kansas, the total sum of $10,000.00 at six percent per annum interest, for the purpose of purchasing the site and constructing a church building thereon; that the plaintiff, Elmer Duncan, would purchase the said site and would receive a deed thereto made to him as grantee from the then owners, the balance of said loan after the payment for said site was to be used for construction of said church building on said site and to be furnished by the plaintiffs to the defendants in four installments as the completion of said church building progressed. That plaintiffs agreed that the defendants should take possession of said site and construct said church building on said site. As consideration for said loan

the defendants agreed to pay to the plaintiffs the sum of at least $100.00 per month. . . . It was furthermore agreed that David H. Essary, as security for said loan, would make and execute in favor of the plaintiff, Elmer Duncan, a warranty deed to a dwelling and lots located in Blackwell, Oklahoma, owned by the defendants, David H. Essary and Norma Essary, described as follows: Lots 17 and 18, Block 123, Original town, now City of Blackwell, Kay County, Oklahoma. That defendant, David H. Essary, advised the plaintiff, Elmer Duncan, that said Blackwell, Oklahoma, property was subject to a mortgage in favor of the Kay County Federal Savings and Loan Co., in an amount of approximately $4,000.00. . . . It was further agreed that said oral agreements were to be reduced to writing and placed in escrow with the National Bank of Commerce, in Wellington, Kansas, and that a deed executed by the plaintiffs to David H. Essary covering said site on which said church was to be built and the aforementioned deed to the property located in Blackwell, Oklahoma, were to be placed in escrow with said aforesaid escrow holder to be held by said escrow holder with said contract. . . .

". . . That relying upon said agreement, the defendant, David H. Essary, delivered said deed to the aforesaid real estate in Blackwell, Oklahoma, to the plaintiff, Elmer Duncan, to be placed in escrow.

. . . . . . . . . . . . .

"That on or about the 7th day of November, 1959, the plaintiff, Elmer Duncan, pursuant to the said hereinbefore mentioned oral agreement, entered into a written agreement with Joe E. Watson, by which Joe E. Watson and his wife were to convey by warranty deed the site for said church building the same being the real estate described in plaintiff's complaint, to the plaintiff, Elmer Duncan, also known as Elmer Clinton Duncan, for the consideration of $1500.00. . . . That pursuant to said oral agreement, the plaintiff, Elmer Duncan, gave to the defendant David H. Essary, a check for $1500.00 drawn on the National Bank of Commerce, Wellington, Kansas, representing the first installment of the loan to be used for the construction of said church building at Belle Plaine, Kansas. That thereupon, pursuant to said oral agreement, the defendants went into possession of said real estate described in the complaint of the plaintiffs and commenced constructing said church building thereon. . . .

. . . . . . . . . . . . .

"The defendants completed the construction of said church building on the outside other than some painting in March of 1960. The said plaintiffs had at that time furnished the sum of $8,500.00 pursuant to said oral agreement for the construction of said church building. That the interior of said church building had not been completed and the defendants did not have enough funds to complete the interior of said church building. That at about that time, the plaintiff, Elmer Duncan, orally agreed with the said defendant, David H. Essary, as an individual, and as agent for the defendant, The Assembly of God Church of Belle Plaine, Kansas, to increase the amount of the loan to said defendants and to furnish additional moneys to said defendants with which to complete the interior of said church building. . . . That pursuant to said last mentioned agreement, the plaintiffs furnished the sum of

$5,000.00 to the defendants to complete said church building and wired said church building as aforesaid.

"In November, 1960, the defendant, David H. Essary, went to the home of the plaintiffs in Wellington, Kansas, to make payment on the aforesaid indebtedness, at which time the said defendant, David H. Essary, tendered a payment on said indebtedness to the plaintiff, . . . That the said plaintiff, Elmer Duncan, refused to have said agreements reduced to writing and refused to accept any payment on said indebtedness but insisted any payments made would be treated by him as rent on the Belle Plaine real estate occupied by said defendants as a church.

"That the defendant, David H. Essary, received the rent from said hereinbefore described real estate located in Blackwell, Oklahoma, until November, 1960, at which time the plaintiff, Elmer Duncan, advised the tenants occupying said real estate that he, Elmer Duncan, was the owner and that the rent was to be paid to him. . . .

. . . . . . . . . . . . .

"That the defendants have sought to pay off said indebtedness and to carry out their part of the oral contract but plaintiffs have refused to accept payment of said indebtedness and to carry out their part of the oral contracts and were ready, willing, and able to so do, and more particularly as follows: . . ."

The prayer of the answer was in part that:

". . . The defendants further pray that the plaintiffs be required to account for all moneys received by both or either of them from the said Oklahoma real estate hereinbefore described; that the amount of the indebtedness due the plaintiffs herein be determined; and that the defendants be decreed to be the owners of the real estate described in the plaintiffs complaint filed herein, subject to said indebtedness, . . ."

The amended answer covered twenty-two printed pages alleging the facts in detail. Only the most pertinent allegations have been quoted.

The case came on for trial and at the conclusion thereof the trial court, after advisory consideration, concluded that the relationship of the parties was that of lender and borrower; that the deeds conveying the real estate in Sumner County, Kansas and Kay County, Oklahoma, were security for loans made by plaintiffs to defendants for the erection of a church building on the Sumner County real estate; that after balancing debits and credits there was due the plaintiffs by defendants the sum of $16,217.12 which constituted a lien against the two pieces of real estate; that the defendants, Essarys, were entitled to a decree adjudging them to be the owners of the real estate in Kay County, Oklahoma, and that the Assembly of God Church of Belle Plaine, Kansas was entitled to a decree adjudging it to be the owner of the real estate in Sumner County, Kansas. Judgment was so entered.

A timely motion for a new trial was overruled and plaintiffs have appealed.

The appellants allege numerous trial errors but the gravamen of their contention is that the oral agreement, that the properties conveyed to the appellants by absolute deeds were to be held as security for a loan, was in violation of the statute of frauds and therefore void.

The appellants direct our attention to G. S. 1949, 33-106 which provides in part:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."

The appellants further call our attention to numerous cases where this court has refused to enforce parole agreements pertaining to land.

The appellees counter with the contention that they had partly performed the agreement and that part performance of an oral agreement pertaining to land takes the agreement out of the operation of the statute of frauds. Numerous cases are cited in support of this general rule of law.

The contention of neither party requires specific attention. The controversy can be determined on much firmer legal grounds, leaving no necessity for the construction and application of the statute of frauds.

This court has held in numerous cases that parole evidence is admissible to prove that a deed absolute in form was in fact an equitable mortgage to secure the payment of a debt, and that such a transaction is not governed by the statute of frauds.

In *Saylor v. Crooker*, 89 Kan. 51, 130 Pac. 689, it was held in the first paragraph of the syllabus:

"An instrument in writing which purports on its face to be an absolute deed of conveyance of land may be shown by parol evidence to have been executed for the purpose of securing the payment of money or to secure the performance of any act or thing which the parties to the instrument may lawfully contract to be performed or done."

The rule was again affirmed in *Dyer v. Johnson*, 109 Kan. 338, 198 Pac. 944, and the earlier cases cited. It was stated at page 342 of the opinion:

"Touching the admission of improper evidence, no particular matters are pointed out for our scrutiny and determination. If this has reference to the admission of parol testimony to show that the warranty deed from Goss to Johnson was only an equitable mortgage to secure to her the purchase money for the eighty acres which was to belong to Robbins if and when he repaid her, or to Dyer if Robbins failed and Dyer stood back of him and paid in his stead, then we come to a question of law which is thoroughly settled in this jurisdiction. Such evidence is competent, and the rule is the same whether the matter involved concerns either realty or chattel property. (*McNamara v. Culver*, 22 Kan. 661, syl. ¶ 2; *Butts v. Privett, Sheriff*, 36 Kan. 711, 14 Pac. 247; *Pope v. Nichols*, 61 Kan. 230, 59 Pac. 257; *Martin v. Allen*, 67 Kan. 758, 761, 74 Pac. 249; *Hubbard v. Cheney*, 76 Kan. 222, 226, 91 Pac. 792; *Winsor v. Winsor*, 78 Kan. 885, 95 Pac. 1136; *Saylor v. Crooker*, 89 Kan. 51, syl. ¶ 1, 130 Pac. 689; *Boam v. Cohen*, 94 Kan. 42, 145 Pac. 559; *Root v. Wear*, 98 Kan. 234, 237, 157 Pac. 1181.)

"See, also, an extended treatise on this subject in L. R. A., 1916 B, 18-610."

The statute of frauds was not intended to affect the power which courts of equity had always exercised to declare absolute deeds to be mortgages to secure a debt. We go back to one of our very early decisions to find a clear statement of the general principle. In *Curtis v. Buckley*, 14 Kan. 449, it was said:

". . . It is claimed by counsel for plaintiff in error, substantially, that an equitable lien on real estate, where it has any real existence, is an interest in land, and cannot be created merely by parol; that the statute of frauds (Gen. St. 505, § 5) prohibits such a thing. All of this we agree to; but still the statute of frauds does not attempt to prohibit the creation of equitable liens by operation of law, nor does any other statute. Stevens v. Chadwick, 10 Kan. 406. Such a lien should, of course, be in accordance with the contract and understanding of the parties affected by it, but still it may sometimes result, by operation of law, from the transactions of the parties, almost wholly independent of the contract that may be made between them. It results, however, from the *whole* transaction, including all the contracts, agreements, and understandings of the parties, parol or otherwise. . . ." (p. 456.)

For the latest pronouncement that it is not necessary that such transactions or agreements pertaining to land should be in writing in order to take them out of the operation of the statute of frauds, see *Hill v. Hill*, 185 Kan. 389, 345 P. 2d 1015.

The contention of the appellants, that the evidence was insufficient to support the finding of the trial court that the absolute deeds were in fact security for a debt, is without merit. The testimony of numerous witnesses supported the facts as alleged in the petition in considerable detail. There was additional testimony that the appellant, Elmer Duncan, joined with the appellee, David H.

Essary, in instructing an insurance agent to prepare a fire insurance policy on the Belle Plaine church building naming Essary as the insured and Duncan as mortgagee. An application to have the Belle Plaine property removed from the tax rolls was also introduced. The application stated that the property was exclusively for religious purposes and carried Duncan's signature under oath.

Appellants complain of the rental credits which the trial court allowed the appellees after the appellants took possession of the Kay County, Oklahoma property. The trial court allowed a credit for substantially the same amount of monthly rent as was being paid at the time possession was taken by the appellants. Appellants contend that the appellees should have produced evidence as to the exact net amount received by appellants. They state:

". . . Plaintiffs submit that the allowance of rentals received by Duncan as a debit against any amounts due Plaintiffs from Defendants is an affirmative matter raised by the Defendants' Amended Answer, and the burden of proof was upon the Defendants to show these amounts. . . ."

If appellants reduced the rent, failed to collect part of the rent or had some unusual expenditures, this was a matter peculiarly within their own knowledge. The appellees produced all of the facts they had in their possession, i. e., the amount of rent that was being paid when the appellants took possession of the property. Appellants cannot be heard to say that appellees must produce more detailed facts when the details are particularly within appellants' own knowledge. In *Blackburn v. Colvin*, 191 Kan. 239, 380 P. 2d 432, it is stated at page 244 of the opinion:

". . . The failure of a party to throw light upon an issue particularly within his own knowledge raises a presumption that the concealed information is unfavorable to him. (*In re Estate of Grisell*, 176 Kan. 209, 214, 270 P. 2d 285, and cases cited.) . . ."

A careful consideration of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.