Dr. Earl EVANS, Appellant,

v.

W. H. "Sonny" DILLAHUNTY and William E. Amos, in their official and individual capacities, Appellees.

No. 81–1047.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 13, 1981.

Decided Nov. 2, 1981.

Rehearing Denied Dec. 24, 1981.

George W. Proctor, U.S. Atty., Kenneth F. Stoll, Asst. U.S. Atty. (argued), Edward G. Adcock, Paralegal, Little Rock, Ark., for appellees.

Richard Quiggle, Little Rock, Ark., for appellant.

Before HENLEY and ARNOLD, Circuit Judges, and BECKER,* Senior District Judge.

ARNOLD, Circuit Judge.

Dr. Earl Evans brought this action in the United States District Court for the Eastern District of Arkansas, seeking a remedy directly under the federal Constitution.[1] Dr. Evans, a one-time federal prisoner, alleged that certain conduct of the defendants involving his application for parole violated his rights under the Fifth Amendment. Dr. Evans also brought a pendent claim for slander under Arkansas law. The District Court granted the defendants' motion to dismiss for failure to state a claim, holding that the complaint alleged only an injury to reputation and therefore failed to assert any constitutional deprivation. See *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Because we believe that the federal parole process involves not just the reputation of applicants for parole, but a constitutionally protected expectation of liberty under the federal parole statutes, we reverse.

I.

The case was disposed of below on a motion to dismiss, so we look only to the complaint for the relevant facts. The plaintiff's allegations must be taken as true for present purposes. Dr. Evans was sentenced in the United States District Court for the Northern District of Mississippi to two years imprisonment on December 7, 1977, after being convicted of two counts of causing the interstate transportation of fraudulent checks. See 18 U.S.C. § 2314.[2] After serving a portion of his sentence Dr. Evans became eligible for parole. A parole hearing was held before a two-person parole panel, which presumably considered the relevant records and testimony. The panel recommended parole for Dr. Evans. The recommendations of a parole panel, however, do not become final if they are disapproved by the Regional Commissioner of the Parole Commission, here the defendant William E. Amos. Plaintiff claims that although the Commissioner's approval of such recommendations is customarily and routinely granted, it was not forthcoming in this case.

The complaint alleges that in conjunction with his review of the panel's recommendation, Dr. Amos contacted W. H. Dillahunty, then the United States Attorney for the Eastern District of Arkansas, to confirm the authenticity of one of the letters written in support of Dr. Evans's early release. The now-controversial letter was written by Dr. Bob Riley, a former Governor of the State of Arkansas. The letter listed Dr. Riley as the state's 39th Governor and was on official Office-of-the-Governor letterhead. In response to Amos's inquiry Dillahunty is alleged to have stated that Riley had never served as Governor and that he, in fact, was dead at the time the letter was written. Both of these statements are alleged to be false.[3] Amos is said to have rejected the panel's recommendation on the basis of this unfavorable, yet erroneous, report. Plaintiff alleges that, because of this conduct on the part of defendants, he spent four more months in the federal penitentiary than he otherwise would have.

---

* The Hon. William H. Becker, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for the theoretical underpinnings of this kind of action.

2. The conviction was affirmed on appeal. *United States v. Evans*, 579 F.2d 360 (5th Cir. 1978).

3. The District Court took judicial notice that Dr. Riley served as thirty-ninth Governor of Arkansas from January 3, 1975, through January 14, 1975, and that Dr. Riley is alive.

Finally, Evans complained that the false statements of Dillahunty were slanderous as to him because they implied that he submitted a forged letter of recommendation from a non-existent Governor; that Amos deprived him of liberty without due process of law when he relied on the statements without giving him an opportunity to refute them; that Dillahunty, by making the false statements, likewise violated the Due Process Clause of the Fifth Amendment in connection with the parole application; and that Dillahunty caused plaintiff to be investigated by the Federal Bureau of Investigation.

The defendants filed a timely motion to dismiss and a supporting memorandum which argued that the claims were precluded by the privilege afforded officials of the government in the exercise of their official duties; that the complaint did not raise any issue of a denial of due process because there was no right to parole; and that allegations of a defamation by a public official did not give rise to a claim of a denial of due process under the decision in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

The District Court found it unnecessary to consider the scope of official immunity, because it felt that the plaintiff's claims were foreclosed by the decisions in *Paul v. Davis, supra*, and *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The plaintiff's claims under federal law were dismissed for failure to state a claim, and the pendent claim under state law was dismissed without prejudice.

On appeal the plaintiff makes two arguments: (1) that the complaint raises issues going beyond mere defamation and that thus the action is not barred by *Paul v. Davis*, and (2) that the allegations state a claim for denial of due process in connection with plaintiff's parole application. We agree with both of these arguments and therefore reverse the judgment of the District Court.

## II.

*Paul v. Davis, supra*, teaches that a defamation by a government official does not implicate the procedural requirements of the Due Process Clause (here, of the Fifth Amendment) unless the individual is also deprived of some other right previously defined by law that could properly be characterized as "liberty" within the meaning of the Due Process Clause.[4] *Paul v. Davis, supra*, 424 U.S. at 710–12, 96 S.Ct. at 1164–65. The District Court considered the plaintiff's action to be, in essence, one for defamation, with no incidental denial of any other right held under law. This conclusion was based, in part, on language in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979), cited by the District Court, to the effect that there is no inherent or constitutional right to parole release. This statement is no doubt true in a general sense, but as we will explain, it does not embody the full teaching of *Greenholtz*, nor does it resolve all the issues presented in this complaint.

*Greenholtz* was a class action under 42 U.S.C. § 1983 brought by the inmates of the Nebraska Penal and Correctional Complex. The inmates claimed, *inter alia*, that they had been unconstitutionally denied parole without procedural due process. 442 U.S. at 3–4, 99 S.Ct. at 2102. After an examination of the "unique structure and language" of the Nebraska parole statutes, the Supreme Court concluded that the statutory requirements did create a liberty interest, that is, an expectancy of release, that was entitled to the protection of due process. *Id.* at 12, 99 S.Ct. at 2106. Thus, the more complete lesson of *Greenholtz* is that, though there is no inherent right to parole, a limited right to parole may be provided by applicable statutes. The question in each case must turn on a careful examination of the particular statutes and regulations governing parole in a given jurisdiction.

---

**4.** While *Paul* was a suit brought under 42 U.S.C. § 1983, and the present one is brought directly under the Constitution, see *Bivens, supra*, the same reasoning would apply.

Accordingly, resolution of the question whether a federal prisoner has a limited right to parole protected by the Due Process Clause necessarily involves an analysis of the relevant federal parole statutes.[5] We begin by noting that not every expectation, whether born of statute or otherwise, gives rise to a protectible interest. For example, in *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976), a prisoner's expectation that he would remain at a particular prison was found to be "too ephemeral and insubstantial to trigger procedural due process protections" where officials had the discretion to transfer him for any constitutionally permissible reason or no reason at all. But when one can show that the decisionmaker is required to base its decisions on specific, defined criteria, a protectible interest is created that is entitled to some degree of due-process protection. *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring).[6]

In the specific context of a limited right to parole, an important factor has been the presence or absence of mandatory language in the parole statute. This factor was the primary focus of this Court's analysis in the recent case of *Williams v. Missouri Board of Probation and Parole*, 661 F.2d 697 (8th Cir. 1981), which, of course, was unavailable to the court below. See also *Boothe v. Hammock*, 605 F.2d 661, 663–64 (2d Cir. 1979). In *Williams* we said:

> After examining the similar Missouri provision in the light cast by the *Greenholtz* decision, we conclude that the Missouri law providing that *when* the statutory and regulatory guidelines are met the inmate *shall* be released on parole gives rise to the same protectible entitlement as the Nebraska scheme providing that the prisoner *shall* be paroled *unless* certain findings are made.

661 F.2d at 699.[7]

The federal parole statute contains language similar for present purposes to the

---

**5.** Appellees argue in their brief that several circuits have found no liberty interest implicated by federal parole determinations. *E. g., Brown v. Lundgren*, 528 F.2d 1050, 1053 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976). The cases cited by appellees, however, involved a now-repealed federal parole statute which contained provisions that are quite different from those now in effect. *Compare* 18 U.S.C. § 4203 (1969), *with* 18 U.S.C. § 4206 (Supp.1981) (1976). Thus, the cited cases have little relevance to the case at bar. In one post-*Greenholtz* case involving the current parole statute, the Fifth Circuit has stated that "a parole release decision does not invoke the protection of due process since the denial of parole does not amount to a loss of liberty." *Page v. United States Parole Commission*, 651 F.2d 1083, 1086 (5th Cir. 1981) (per curiam) (alternative holding). The opinion contains no analysis of the federal parole statute to compare it with the Nebraska statute held in *Greenholtz* to create a limited liberty interest. For reasons stated in text, our own reading of the federal parole statute leads us to the conclusion that it does create an interest worthy of some due-process protection.

**6.** In *Dumschat* the Court held that the mere existence of a power to commute lawfully imposed sentences does not create a right or entitlement, even where the plaintiffs could show a consistent practice of granting commutations to most life inmates. In essence, due process

was not implicated because the state was not required to act on prescribed grounds.

**7.** The Missouri parole statute provides, in part:

> *When* in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board *shall* release on parole any person confined in any correctional institution administered by state authorities ....

Mo.Ann.Stat. § 549.261(1) (Vernon) (Supp. 1981) (emphasis ours). The Nebraska parole provision at issue in *Greenholtz* provided:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because:
> (a) There is a substantial risk that he will not conform to the conditions of parole;
> (b) His release would depreciate the seriousness of his crime or promote disrespect for law;
> (c) His release would have a substantially adverse effect on institutional discipline; or
> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

Neb.Rev.Stat. § 83–1,114(1) (1976) (emphasis ours).

Missouri and Nebraska statutes we have set forth in the margin. The statute provides in part:

> *If* an eligible prisoner has substantially observed the rules of the institution . . . and *if* the Commission . . . determines:
>
> (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and
>
> (2) that release would not jeopardize the public welfare; [then] subject to the . . . guidelines promulgated by the Commission . . . , such prisoner *shall* be released.

18 U.S.C. § 4206(a) (emphasis ours). The guidelines referred to are a breakdown of various combinations of offenses and offender characteristics along with corresponding salient-factor scores. 28 C.F.R. § 2.20. Use of the guidelines, in the words of the Commission, is an effort to "promote a more consistent exercise of discretion." 28 C.F.R. § 2.20(a).

■ These guidelines are somewhat like the ones contained in the Nebraska parole statute considered in *Greenholtz*. See Neb. Rev.Stat. § 83–1,114(2). The Nebraska Board of Parole when making a parole release decision must consider such factors as the offender's prior criminal record, family status, intelligence, and the like, *and* "[a]ny other factors the board considers to be relevant." [8] Neb.Rev.Stat. § 83–1,114(2)(n). Although the Court in *Greenholtz* did not examine the Nebraska guidelines extensively, we mention them here in order to make an important point. The exercise of discretion under the federal statute is more limited than that exercisable under the Nebraska scheme. While the Board in Nebraska is free to consider any other factors it deems relevant, the federal Parole Commission cannot deviate from the guidelines contained in 28 C.F.R. § 2.20 unless it "determines there is good cause for so doing: *Provided*, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied on." 18 U.S.C. § 4206(c). When one considers this specific limitation on the Commission's exercise of discretion and the presence of the mandatory word, "shall," the conclusion that the federal parole statute creates a substantial expectancy of parole follows.

■ We need not discuss in detail here what process is due in connection with the federal parole process. Plaintiff's claim in this respect is a narrow one. He alleges simply that

> Plaintiff was not permitted to respond to the false statements by Dillahunty, and in fact was ignorant of their existence, and was thus denied due process of law in connection with his parole application.[9]

As we have recently reaffirmed in *Williams v. Missouri Board of Probation and Parole, supra*, at 700, "due process imposes the requirement that an inmate be advised of adverse information that may lead to an unfavorable decision and be given an opportunity to address it." The principle must, to be sure, be flexibly applied. The state, or, as in this case, the United States, has, for example, "strong and legitimate interests in preserving the confidentiality of sources of information necessary for parole release decisions and in maintaining security and discipline within its institutions." *Id.*, at 700 (footnote omitted). None of these legitimate interests seems to be involved here, however. On the record as it now stands, we see no reason why Amos could not have given Evans a chance to reply to Dillahunty's statements that Riley had never been Governor and in fact had died.[10]

---

8. As the Court said in *Greenholtz*, "[l]ike most parole statutes, it [the Nebraska statute] vests very broad discretion in the Board." *Greenholtz, supra*, 442 U.S. at 13, 99 S.Ct. at 2107.

9. Complaint ¶ 10, found on p. 2 of the Designated Record (D.R.) filed in this Court.

10. Plaintiff's brief in this Court emphasizes 28 C.F.R. § 2.19(c) (1980), which provides in part:

> (c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the

### III.

 Fairness to the defendants requires us to add a few observations about the facts of this case. In the first place, although the complaint alleged that "Dillahunty informed defendant Amos that . . . Bob Riley [was] never the governor of the State of Arkansas," ¶ 9, D.R. 2, Exhibit 2 to the complaint, D.R. 5, a letter from Amos to Dillahunty, recites only that "[i]n my phone conversation with you on December 1, you indicated that Bob Riley was not governor . . . ." This language appears to mean that Dillahunty told Amos *not* that Riley had *never* been Governor, but *only* that Riley was not Governor on December 1, 1978, which of course was true. Furthermore, attached as Exhibit D to Appellees' Brief in this Court is a letter from Dillahunty to Amos, dated December 6, 1978, advising that he, Dillahunty, had been mistaken in saying that Riley was dead. It appears, therefore, that whatever misstatements were made were promptly corrected. It is difficult to see how plaintiff's parole could really have been affected by this sequence of events. It is not alleged that Dillahunty acted maliciously,[11] or even recklessly, and he may well have done no more than duty required—to answer an inquiry put to him by an official of the United States ·Parole Commission.

 The Dillahunty letter of December 6, 1978, however, was not before the District Court, nor was it even known to counsel for plaintiff until he was served with Appellees' Brief in this Court. The judgment before us on this appeal dismissed the complaint for failure to state a claim. No motion for summary judgment was ever filed or ruled on. For reasons we have explained, we cannot agree that no claim was stated on the face of the complaint,

and the judgment must therefore be reversed, and the cause remanded for further proceedings consistent with this opinion.

It is so ordered.

---

prisoner is apprised of the information and afforded an opportunity to respond.

This regulation was not in effect when Evans received his initial parole hearing. It was published on May 4, 1979, 44 Fed.Reg. 26550, to be effective at initial hearings on and after June 4, 1979. The regulation does indicate, however, that the Parole Commission recognizes some obligation to afford a prisoner the opportunity to rebut unfavorable information.

11. See, however, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), holding that a complaint under 42 U.S.C. § 1983 may not be dismissed under Fed.R. Civ.P. 12(b)(6) because it fails to allege bad faith on the part of the defendant state officials. Qualified immunity based on good-faith performance of official duty is an affirmative defense that the defendant has the burden of pleading.