726 P.2d 693

**Lois W. PACE, Plaintiff-Respondent,**

v.

**Cheryl HYMAS, Eugene L. Miller, Nels L. Solberg, Janet S. Hay, J. Clint Hoopes, Robert L. Montgomery, Leno D. Seppi, as the State Board of Education: Raymond L. Miller, as the Dean of the College of Agriculture at the University of Idaho: and Richard D. Gibbs, President of the University of Idaho, Defendants-Appellants.**

**No. 15972.**

Supreme Court of Idaho.

July 24, 1986.

On Denial of Rehearing Oct. 28, 1986.

Donald J. Farley (argued), Thomas V. Munson, and Morgan W. Richards, Jr., of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendants-appellants.

Roy E. Mosman (argued), and Dean Wullenwaber, Moscow, Ralph S. Brown, New Haven, Conn., Jacqueline W. Mintz and Ann H. Franke, Washington, D.C., for plaintiff-respondent.

BISTLINE, Justice.

On June 30, 1981, Lois Pace was laid off from her tenured faculty position with the University of Idaho on the grounds of a financial exigency. At the time she was discharged, Pace held the position of professor in the home economics program of the University's College of Agriculture. Pace was one of five members of a cooperative extension service offered by the University through the research and extension division of the College of Agriculture.

At the time of her discharge, Pace had 31 years' experience in her profession, the last nine being with the University of Idaho.[1] Pace was the most experienced of the five members of the extension service program, but the only one laid off. When she was terminated, Pace was 54 years old; she could have voluntarily retired with full benefits with only one more year of service.

After being discharged, Pace filed suit against the defendants. Pace's complaint alleges that the defendants denied Pace her due process rights in discharging her. The defendants answered Pace's complaint, denying liability and alleging several affirmative defenses.

A central issue in the case is whether there was a valid financial exigency to justify the defendants' decision to terminate Pace. The defendants argued there was; Pace argued there was not.

For ease in handling the case, the district court bifurcated the trial. The first part of the trial was to deal solely with the issue of whether or not a *bona fide* financial exigency existed. The second part of the trial would deal with (1) whether her discharge based on the alleged financial exigency violated due process subject to a remedy pursuant to 42 U.S.C. § 1983, and (2) all the other issues in the case. The district court, in a pre-trial order, also ruled that the

1. .Before coming to Idaho, Pace had been similarly employed with the University of Missouri for 22 years.

defendants would have the burden of proving that a financial emergency existed. Neither side objected to the district court's decision to bifurcate the trial, but the defendants did object to the district court's decision to place the burden of proving a financial exigency on them.

The first part of the trial, heard by the district court without a jury, commenced on November 5, 1984. The evidence introduced in this stage of the trial included the following: On April 10, 1981, the State Board of Education issued a declaration of financial exigency. The declaration included the University of Idaho's Agricultural Research and Cooperative Extension Service. On May 12, 1981, President Gibb informed Pace that because of the financial exigency, she would be laid off.

Pace was a tenured faculty employee. The University's faculty-staff handbook defines "tenure" as follows:

A condition of presumed continuing employment that is accorded faculty members by the regents, usually after a probationary period, on the basis of an evaluation and affirmative recommendation by a faculty committee with concurrence by the faculty member's departmental administrator and college dean and by the president. *After tenure has been awarded, the faculty member's service can be terminated only for adequate cause,* the burden of proof resting with the University of Idaho (see 4550), ... *or under conditions of financial exigency as declared by the Board (see 4580),* or in situations where extreme shifts of enrollment have eliminated the justification for the existence of the position.

R., Vol. 5, p. 298 (emphasis added). "Financial exigency" is defined by the Handbook as follows:

A *demonstrably bona fide,* imminent financial crisis which threatens the viability of an agency, institution, office or department as a whole or one or more of its programs, or other distinct units, and which *cannot be adequately alleviated by means other than a reduction in the employment force.*

R., Vol. 5, p. 319 (emphasis added). There is no dispute that these two definitions were a part of Pace's contract of employment.

The defendants do not argue that Pace was discharged for any reason other than the alleged existence of a financial exigency. Thus, the propriety of discharging her hinged on whether a financial exigency did exist.

In 1981, the Idaho legislature appropriated $12,197,600 for fiscal year 1982 for the Agricultural Research and Cooperative Extension Service (the "Service"). The Service had requested $12,610,500, which resulted in an alleged shortfall of $412,900. The fiscal year 1982 appropriation, however, was $773,100 greater than the 1981 appropriation.

House Concurrent Resolution No. 24, 1981 Idaho Sess.Laws, p. 772, called for an "across-the-board" salary increase of seven percent. University officials did not treat this resolution as mandatory, because some university employees received more than a seven percent salary increase while others did not. The legislature appropriated $667,800 to fund the salary increase for the Service. The district court found that a portion of this amount could have been used to help alleviate the alleged financial crisis at the Service.

At the end of the 1981 fiscal year, a $383,500 surplus was discovered in the Service's budget. Of this amount, $135,000 was already committed to research projects and was not available for personnel costs. The purchase of word processing and other equipment took another $135,000 from the surplus. The remaining $112,000 of the surplus was totally uncommitted. This amount was used for costs other than personnel. The district court found that this amount could have been used to alleviate the Service's financial crisis. The evidence also showed increases in the Service's fiscal year 1982 budget.

The district court found that alternatives other than a reduction in personnel were not considered by the State Board of Edu-

cation when it declared the financial exigency. The Board of Education was not informed of and "did not consider the dollar savings possible by freezing or reducing the increases in such budget areas as salary, travel, capital outlay, supplies, or equipment." R., Vol. 5, p. 321.[2] The Board of Education also was never informed of the $383,500 surplus which existed at the end of fiscal year 1981 in deciding to declare the financial exigency.

Based upon these facts, the district court held that because of the definitions of "tenure" and "financial exigency," as found in the University of Idaho's faculty handbook, and which were part of Pace's contract, the defendants had failed to prove a *"demonstrably bona fide* financial exigency." (Emphasis added.) Specifically, the court held that the defendants had "failed to prove that the financial crisis could not have been 'adequately alleviated by means other than a reduction in the employment force.'" R., Vol. 5, p. 322, *quoting* the faculty handbook, Ex. No. 208.

After entering findings of fact and conclusions of law, the district court certified its decision on the matter of financial exigency as final, and this Court granted the defendants' motion to appeal by certification. Subsequently, attorneys for the American Association of University Professors filed a motion, which was granted, to participate as *amicus curiae.*

The defendants raised eight issues on appeal. Six of these issues are raised prematurely because they involve matters yet to be decided in the second half of the

bifurcated trial. The trial court's pretrial order made clear that the *only* issue it was deciding in the first half of the trial was whether a financial exigency existed in 1982 which justified the defendants' decision to terminate Pace. In deciding this issue, as mentioned above, the district court held that the burden of proving a financial exigency rested with the defendants. The two issues properly before this Court are, therefore, whether the district court erred in placing the burden of proof upon the defendants with respect to proving a demonstrably *bona fide* financial exigency, and whether there is substantial and competent evidence to sustain the district court's finding that no financial exigency existed at the time Pace was fired. Addressing these issues in that order, we hold that the district court did not err. We therefore affirm the district court.

## I. THE BURDEN OF PROVING A FINANCIAL EXIGENCY WAS PROPERLY PLACED UPON THE DEFENDANTS

Pace's action is for an alleged violation of 42 U.S.C. § 1983.[3] Under § 1983, in order for a plaintiff to prevail, he or she must "prove a violation of the underlying constitutional right...." *Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). We have found no authority, however, which states that this rule means that the burden of proof on all issues in a § 1983 case must be placed upon the plaintiff, and a review of applicable case law shows that this is not the rule.

---

**2.** Dean Gibb testified that if salaries had been frozen, $250,000 would have been saved. If the travel budget had been frozen, $43,000 would have been saved. Finally, if the supplies budget had been frozen, $200,000 would have been saved. R., Vol. 2, pp. 326–28.

   The district court relied upon the testimony of Jerry Evans, State Superintendent of Public Instruction and a member of the Board of Education, for the finding that none of these alternatives were considered by the Board before issuing its declaration. R., Vol. 3, pp. 454–55.

**3.** 42 U.S.C. § 1983 provides:

   **§ 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

█ In § 1983 cases the burden is on the *defendants* to prove affirmative defenses, such as good faith or immunity. *See, e.g., Harris v. Pirch*, 677 F.2d 681, 686 (8th Cir.1982); *Evans v. Dillahunty*, 662 F.2d 522, 527 n. 11 (8th Cir.1981). In racial discrimination cases, once a plaintiff has successfully proven a *prima facie* case of unlawful discriminatory action, the burden shifts upon the *defendant* to prove some legitimate, nondiscriminatory reasons for the allegedly unconstitutional action. *See, e.g., Taylor v. Jones*, 653 F.2d 1193, 1201–02 (8th Cir.1981); *Jackson v. City of Akron, Ohio*, 411 F.Supp. 680, 687 (N.D.Ohio 1976). In search and seizure cases, the burden of pleading and proving exceptional circumstances authorizing a search without a search warrant is upon the *defendants* who conducted the search. *Cohen v. Norris*, 300 F.2d 24, 32 (9th Cir.1962).

These cases, concededly, are not directly on point with respect to the issue before us. They do show, however, that in certain circumstances a defendant in a § 1983 case will have the burden of proving a fact or explaining certain conduct. In short, the cases referred to refute any argument that a plaintiff *always* has the burden of proving every factual dispute which arises in a § 1983 case.

█ Applying these cases to the facts here convinces us that the district court did not err. Pace introduced evidence, which was undisputed, that she was a tenured professor. Her contract, quoted above, specifically guaranteed her continued employment with the University of Idaho except in cases where adequate cause is shown or a financial exigency exists. The defendants do not argue that Pace was fired for adequate cause. Thus the only valid reason under Pace's contract for which she could be terminated was the existence of a financial exigency. "Financial exigency," as mentioned above, is defined in pertinent part by the University of Idaho's faculty-staff handbook as a *"de-*

monstrably bona fide* imminent financial crisis ... which cannot be adequately alleviated by means other than a reduction in the employment force." [4] (Emphasis added.) As developed below, this definition clearly placed the burden of proof of this issue on the defendants.

If the word "demonstrably" has any meaning at all, it must mean that the party *declaring* the exigency must be able to *demonstrate* the existence of a *"bona fide* imminent financial crisis ... which cannot be adequately alleviated by means other than a reduction in the employment force." R., Vol. 5, p. 319. The alternative would require Pace to demonstrate the non-existence of such a financial crisis, an interpretation clearly at odds with basic grammar and common sense. Other considerations also confirm our holding that the burden of proving a financial exigency rested with the defendants.

█ It is the general rule that where evidence necessary to establish a fact lies peculiarly within the knowledge and competence of one of the parties, principles of fairness require that party to bear the burden of going forward with evidence on the issue. *See, e.g., United States v. The New York, New Haven & Hartford Railroad Co.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214–15 n. 5, 2 L.Ed.2d 247 (1957); *Browzin v. Catholic University of America*, 527 F.2d 843, 849 (D.C.Cir.1975); *Fitzgerald v. Wright*, 155 N.J.Super. 494, 382 A.2d 1162, 1165 (App.Div.1978); *Dixon v. Anadarko Production Co.*, 505 P.2d 1394, 1396 (Okl. 1973); *Morris v. Williams*, 67 Cal.2d 733, 433 P.2d 697, 715, 63 Cal.Rptr. 689, 707 (1967); *Duncan v. Essary*, 193 Kan. 241, 392 P.2d 877, 883 (1964); Cleary, *McCormick on Evidence* § 337, p. 950 (3d ed. 1984). Applying this rule required the defendants to bear the burden of proving a financial exigency, because the numerous facts and considerations which went into the defendants' decision to declare a finan-

---

**4.** Both parties agree that this is the controlling definition of financial exigency for purposes of this case.

cial exigency were specially within their knowledge.

■ It is also the general rule that " 'where the defense to an action is of an affirmative nature, the defendant becomes the proponent, and has the burden to bear....' " *Southeast Securities Co. v. Christensen*, 66 Idaho 233, 239, 158 P.2d 315, 317 (1945), *quoting Piland v. Crazy*, 194 Okl. 666, 154 P.2d 583, 585 (1944). Here the defense to Pace's claim is financial exigency. This defense is affirmative in nature. Accordingly, applying this rule, the defendants also had the burden of proving a financial exigency.

The fact that Pace has the burden of proving a constitutional deprivation does not change our analysis. There is no dispute here that Pace has a property interest in her contract which is constitutionally protected by the due process clauses of both art. 1, § 13 of the Idaho Constitution and the Fourteenth Amendment to the United States Constitution. *Harkness v. City of Burley*, 110 Idaho 353, 715 P.2d 1283, 1286–87 (1986). Thus, to prevail, Pace must still show that her dismissal violated due process.

The due process guaranteed Pace has both a procedural and a substantive component to it. *Harrah Independent School District v. Martin*, 440 U.S. 194, 197, 99 S.Ct. 1062, 1063, 59 L.Ed.2d 248 (1979); *Kelley v. Johnson*, 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976). Pace does not argue that she was denied procedural due process, only that she was denied substantive due process. *See* Respondent's Brief, p. 27. Hence, in order to prevail, Pace has the burden of proving a substantive due process violation.

■ "Substantive due process" means "that state action which deprives [a person] of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.' " *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1, 3–4 (7th Cir.1974). *Accord Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1231 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 599, 88 L.Ed.2d 578; *Korf v. Ball State University*, 726 F.2d 1222, 1228 (7th Cir.1984); *Brenna v. Southern Colorado State College*, 589 F.2d 475, 477 (10th Cir. 1978). Accordingly, refining further Pace's burden of proof, to prevail clear she must show that the decision to discharge her was arbitrary, capricious, or without a rational basis.

Pace has not yet had the opportunity to go forth with her proof—that part of the case is set for the second half of the bifurcated trial. The fact that the defendants have failed their burden of proving a financial exigency does not mean, in and of itself, that her discharge necessarily violated substantive due process. While the absence of a *bona fide* financial exigency certainly strengthens Pace's argument that the decision to discharge her—a breach of her contract—was arbitrary, capricious or without a rational basis, it is clear that this fact alone does not necessarily change Pace's burden of proof nor necessarily satisfy it, although it might, depending upon the facts of the case.[5]

A review of case law on this issue sustains our analysis. In *Browzin, supra*, 527 F.2d 843, the plaintiff, a college professor, was dismissed as a result of an alleged financial exigency. Plaintiff sued for breach of contract. Before trial plaintiff stipulated that a financial exigency existed at the time of his firing. Plaintiff argued that even though there was a financial exigency, the defendants breached his contract because his contract also required the defendants to make every effort to find the plaintiff a different job within the University.

The district court placed upon the plaintiff the burden of proving that the Univer-

---

5. The mere breach of a contract does not necessarily, in and of itself, mean that a due process violation has occurred. *Brenna, supra*, 589 F.2d at 477. It is certainly probative evidence on the issue—evidence the trier of fact should carefully consider along with the other evidence presented at trial in deciding the issue.

sity had not made every effort to find plaintiff a different job within the University. Plaintiff did not object to this. *Id.* at 849-50. The district court ruled against the plaintiff, holding that he had failed his burden of proof. The District of Columbia Court of Appeals affirmed the district court. *Id.* With respect to the burden of proof issue, it noted that because plaintiff had not objected to having the burden placed upon him, it would not reverse the district court's decision of placing the burden upon plaintiff. *Id.* Significantly, however, the court did state that had the issue been properly preserved, it would have disagreed with the district court's decision to place the burden upon the plaintiff. Said the court: "Ordinarily a litigant does not have the burden of establishing facts peculiarly within the knowledge of the opposing party. The University here was plainly in a far better position to know what efforts were or were not undertaken to find for [plaintiff] another post within the University." *Id.* at 849 (footnotes omitted). This analysis is consistent with ours.

The *Browzin* court relied upon another case, *AAUP v. Bloomfield College,* 129 N.J.Super. 249, 322 A.2d 846, 856 (1974), for support. *Bloomfield College* is a superior court decision which held under facts quite similar to those found in our case that the defendants had the burden of proving a financial exigency which would justify their firing of several tenured faculty members. Defendants appealed.

In *AAUP v. Bloomfield College,* 136 N.J. Super. 442, 346 A.2d 615, 616 (App.Div. 1975), the New Jersey Appellate Court affirmed the lower court, stating:

> [Tenure] was their [the faculty members'] vested right which could legally be divested only if the defined conditions occurred. The proof of existence of those conditions as a justifiable reason for terminating the status of the plaintiffs plainly was the burden of defendants.
>
> > Where a party seeks to avoid a contractual obligation by reason of the happening of an event or condition

stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it. [*Fitzmaurice v. Van Vlaanderen Mach. Co.,* 110 N.J.Super. 159, 165, 264 A.2d 740, 744 (App.Div.1970), aff'd 57 N.J. 447, 273 A.2d 561 (1971)].

3A *Corbin, Contracts,* § 749 (1960).

Another case involving the placing of burden of proof is *Krotkoff v. Goucher College,* 585 F.2d 675 (4th Cir.1978). The federal district court placed upon the defendants the burden of proving, among other things, whether a financial exigency existed at Goucher College, which would justify their terminating the plaintiff, who was a tenured faculty member. *Id.* at 676–77. The jury found for the plaintiff, but the district court entered a judgment notwithstanding the verdict, holding that the defendants had satisfied their burden. The plaintiff appealed. On appeal, the district court's decision was affirmed. *Id.* at 683. No issue was raised concerning the allocation of burden of proof.

The final case this Court found dealing with the burden of proof issue is *Bignall v. North Idaho College,* 538 F.2d 243 (9th Cir.1976). The facts in *Bignall* are quite similar to ours: plaintiff was a tenured faculty member who was laid off after the defendants declared a financial exigency. Plaintiff sued defendants under 42 U.S.C. § 1983, arguing that her procedural and substantive due process rights were violated because (1) she had not received adequate notice of her termination, and (2) was fired in violation of the terms of her contract. *Id.* at 245. The district court disagreed on both counts and ruled against her.

On appeal, the Ninth Circuit rejected the plaintiff's procedural due process argument, stating that although plaintiff had received inadequate notice, sufficient procedural process was afforded the plaintiff when the district court granted plaintiff a *de novo* trial concerning her discharge. *Id.* at 248.

With respect to plaintiff's substantive due process arguments—and significant to this appeal—the court stated that the de-

fendants "bore the burden of proving that there was a financial exigency...." *Id.* at 249. The court affirmed the district court's decision that the defendants had satisfied this burden. *Id.* That holding which placed the burden of proof on the *defendants* is essentially on a par with ours.

The defendants rely upon three cases to support their position. The first case is *Levitt v. Board of Trustees of the Nebraska State Colleges,* 376 F.Supp. 945 (D.Neb. 1974). In *Levitt,* discharged tenured faculty members brought a § 1983 action against the defendants, alleging that the *process* by which they were selected for termination in light of a budgetary cutback was arbitrary or capricious. The district court disagreed, stating that "the *process* utilized to select the plaintiffs for termination was fair and reasonable and ... the plaintiffs have not carried the burden of proving that the *selection process* was either arbitrary or capricious." *Id.* at 950 (emphasis added). There was no issue in *Levitt* concerning whether a financial exigency existed. As stated above, the only issue was whether the plaintiffs were afforded *procedural due process.* Thus, *Levitt* is inapplicable; it decides an issue not before us and says nothing about the issue we *are* deciding.

Despite its nonapplicability, *Levitt's* holding is *consistent* with our analysis. *Levitt* placed the burden of proving the alleged due process violation upon the plaintiffs. We have reaffirmed that principle here. As mentioned above, Pace still has the burden of proving a substantive due process violation. Requiring the defendants to prove a financial exigency does not contradict this holding.

The other two cases are similar to *Levitt,* and, therefore, are equally inapplicable. *See Brenna, supra,* 589 F.2d 475; *Johnson v. Board of Regents of University of Wisconsin System,* 377 F.Supp. 227 (W.D.Wis. 1974), *aff'd mem,* 510 F.2d 975 (7th Cir.

1975). Accordingly, we affirm the district court on this issue.

## II. SUBSTANTIAL AND COMPETENT EVIDENCE EXISTS IN THE RECORD TO SUSTAIN THE DISTRICT COURT'S DECISION THAT THE DEFENDANTS HAVE FAILED THEIR BURDEN HERE

The second issue is whether the district court erred in ruling that the defendants failed their burden of proving a financial exigency. Finding no error, we affirm the district court on this issue.

■ Our standard of review on this issue is whether the district court's decision was "clearly erroneous." *Bignall, supra,* 538 F.2d at 249.[6] To hold that a finding is not clearly erroneous, there must be substantial and competent evidence in the record to support the finding. *Jensen v. Bledsoe,* 100 Idaho 84, 87, 593 P.2d 988, 991 (1979). Recently, in *Idaho State Insurance Fund v. Hunnicutt,* 100 Idaho 257, 715 P.2d 927, 930–31 (1986), we discussed the term "substantial and competent evidence" in the following manner:

In *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978), this Court discussed the test for determining what constitutes substantial evidence for the purposes of judicial review of an administrative agency's action. We observed:

The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. *Id.* at 633, 586 P.2d at 1349.

Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, *id.* at 634, 586 P.2d at 1350, though "something less than the weight of the evidence." *Con-*

---

6. The defendants must agree that this is the proper standard of review, because they argue that the district court's decision was clearly er-

roneous. *See* Appellant's Opening Brief, p. 45, and Appellant's Reply Brief, p. 1. As discussed below, we disagree with this argument.

*solo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "Put simply," we wrote, "the substantial [competent] evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.' 4 Davis, Administrative Law Text § 29.01–02 at 525–530." *Local 1494, supra*, 99 Idaho at 634, 586 P.2d at 1350; *see also Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.") (cited with approval in *Local 1494, supra*).

In deciding whether the agency's findings of fact were reasonable, reviewing courts should not "read only one side of the case and, if they find any evidence there," sustain the administrative action and ignore the record to the contrary. *Universal Camera, supra*, 340 U.S. at 481, 71 S.Ct. at 460; *quoted in Local 1494, supra*, 99 Idaho at 634, 586 P.2d at 1350. Certainly reviewing courts should not "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera, supra*, 340 U.S. at 488, 71 S.Ct. at 464; *accord, Swisher [v. State Department of Environmental and Community Services], supra*, 98 Idaho [565] at 570, 569 P.2d [910] at 915 [ (1977) ]; *Ajax Paving Industries, Inc. v. National Labor Relations Board*, 713 F.2d 1214, 1217 (6th Cir.1983) ("In conducting its review for substantial evidence the appellate court is not to substitute its own view of the evidence for that of the [agency]...."); *cf.* I.C. § 67–5215(g) ("The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."). Nevertheless, reviewing courts should evaluate whether "the evidence supporting that decision [under review] is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Universal Camera, supra*, 340 U.S. at 488, 71 S.Ct. at 464; *quoted in Local 1494, supra*, 99 Idaho at 634, 586 P.2d at 1350; *accord, Local One, Amalgamated Lithographers v. National Labor Relations Board*, 729 F.2d 172, 175 (2d Cir.1984).

Reviewing courts should not automatically reject an agency finding of fact that is supported by substantial competent evidence "merely because the agency also incidentally mentions incompetent or irrelevant material." *Braniff Airways, Inc. v. CAB*, 379 F.2d 453, 466 (D.C.Cir. 1967); *quoted in Consolidated Gas Supply v. Federal Energy Regulatory Commission*, 606 F.2d 323, 329 (D.C.Cir. 1979), *cert. den.* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 [ (1980) ]. If this happens, "[t]he appropriate standard is to remand for correction of an error only when there is substantial doubt that the administrative agency would have reached the result it did absent reference to the material. [Citations.]" *Consolidated Gas, supra*, 606 F.2d at 329.

Applying *Hunnicutt* (which application follows below), we hold that there is substantial and competent evidence in the record to sustain the district court; accordingly, the district court's findings of an absence of a financial exigency are not clearly erroneous.

For ready convenience, we repeat the University's definition of financial exigency:

A *demonstrably bona fide*, imminent financial crisis which threatens the viability of an agency, institution, office or department as a whole or one or more of its programs, or other distinct units, and which *cannot be adequately alleviated by means other than a reduction in the employment force.*

As mentioned above, pertinent to this definition, the district court found the following:

(1) The declaration of financial exigency was based upon an alleged budget shortfall of $412,900. This shortfall was the difference between the Agricultural Extension Service's 1982 fiscal year budget request of $12,610,500 and the appropriation of $12,197,600, which it received.

(2) The $12,197,600 appropriation amount received by the Service for fiscal year 1982 was $773,100 greater than the Service's 1981 appropriation.

(3) The 1982 appropriation included $667,800 for a seven percent salary increase at the Service.

(4) At the end of fiscal year 1981, a carryover surplus of $383,500 was discovered. At least $112,000 of this amount was totally uncommitted.

(5) The State Board of Education, which declared the financial exigency, was not informed of this carryover surplus before deciding to declare the financial exigency.

(6) The Board also did not consider alternatives other than a reduction in personnel in declaring the financial exigency; options such as freezing or reducing budgeted increases in areas such as salary, travel, capital outlay, supplies, or equipment, were not considered.

(7) The Extension Service's 1982 budget provided for increased spending in all areas.

We have reviewed the evidence supporting these findings and hold that it is substantial, and do so after viewing the "record in its entirety." *Hunnicutt, supra,* 715 P.2d at 931, *quoting Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). The evidence is reasonable and persuasive. It clearly shows that the defendants did not satisfy the requirements for proving a financial exigency; they did not demonstrate a "bona fide, imminent financial crisis ... *which cannot be adequately alleviated by means other than a reduction in the employment force."* R., Vol. 5, p. 319 (emphasis added).

It is the University's own strict and rigorous definition of "financial exigency" which determines this issue today. That definition precludes the declaration of a financial exigency unless several significant hurdles are passed. The evidence clearly supports the district court's finding that the defendants failed in their burden to show that they had cleared the hurdles. Accordingly, for the foregoing reasons, we affirm the district court.

Costs to respondent.

DONALDSON, C.J., HUNTLEY, J., and TOWLES, J. Pro Tem., concur.

SHEPARD, J., dissents without opinion.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice.

Defendant's request for a rehearing is denied. Our previous opinion remains intact for the reasons discussed below.

In their brief in support of a petition for rehearing, defendants' raise essentially one issue. They claim the district court erred in conducting a trial *de novo* of the issue of whether a bona fide state of financial crisis existed within the Cooperative Extension Service of the University's College of Agriculture prior to the termination of Pace's tenured position. Defendants contend, as they did in their appellate and trial briefs, that the district court was bound to apply the deferential standard of review mandated by I.C § 67–5215.

This contention is well wide of the mark, evidencing a misunderstanding of the fundamental nature of the proceeding here under review. Pace brought an *original cause of action* under 42 U.S.C. 1983, *not* a review of an administrative adjudication under I.C. § 67–5215. Therefore, I.C. § 67–5215 has no bearing on this case.

This issue was adequately addressed by the able trial judge upon his consideration of the application of I.C. § 67–5215 upon motions for summary judgment by both parties. Judge Schilling wrote:

Idaho Code, Section 67–5215(a) specifically provides that it "does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law."

In the present case, the plaintiff has chosen to bring a cause of action seeking other means of review, redress, or relief. [42 U.S.C. 1983] The question then is not whether she proceeded with an appeal correctly under Idaho Code, Section 67–5215(b), but whether other means of review, redress or relief is provided by law.

The plaintiff followed the full course of the administrative procedure and received a final decision from an administrative body. At that point, she had the choice of proceeding with judicial review under the provisions of Idaho Code, Section 67–5215 or bringing a separate and original cause of action. She chose to do the latter, and, therefore, is not restricted by either the 30 day Statute of Limitation or the venue requirement contained in the statute. cf. *Mills v. Swanson*, 93 Idaho 279, 460 P.2d 704 (1969).

The propriety of the district judge's actions is indicated by the case of *Bignall v. North Idaho College*, 538 F.2d 243, 248 (9th 1976). The plaintiff brought an action under 42 U.S.C. 1983 claiming that North Idaho College had denied Mrs. Bignall procedural and substantive due process when it declined to renew Mrs. Bignall's teaching contract. The Bignalls' allegations included, among others, a claim that the College violated its own tenure policy by not showing a "demonstrable financial exigency" when it terminated Mrs. Bignall. *Id.* at 245. When proceedings before the Board had fully concluded, and the instant case was filed and at issue, there was, as here, a *de novo* evidentiary trial. *Id.* at 248. Defendants did not question the propriety of the *de novo* hearing.

It is the role of courts, not administrative bodies, to adjudicate constitutional rights. It should always be kept in mind that the evil of administrative action which must be guarded against is not the fact-finding power, but the conclusiveness of the fact-finding power coupled with the order based on the findings made which would deprive a person of a property right. Such is the full exercise of judicial power, and such power in this state can be exercised only by one of the enumerated courts. *Local 1494 v. City of Coeur d'Alene*, 99 Idaho 630, 636, 586 P.2d 1346, 1352 (1978) (citations omitted).

DONALDSON, C.J., HUNTLEY, J., and TOWLES, J. Pro Tem., concur.

SHEPARD, J., dissents, and would grant the petition for rehearing.